If it may please the Court, my name is Helen Zabel and I am one of the three attorneys that represent the petitioners today. What we are asking the Court in this case is to equitably toll the 10-year residency requirement in cancellation cases. Our request is narrow in scope to these petitioners. Specifically, the first reason is because there was a fraud committed against them by previous counsel that is now disbarred. And because of the second reason, the immigration judge found that the qualifying United States citizen relative would suffer exceptional and extremely unusual hardship. The judge also found that there was fraud committed against the petitioners. Counsel, what is the statutory authority for the equitable tolling that you seek? Your Honor, I am looking at Albillo de Leon v. Gonzales. We believe that that is the controlling case in this matter. Actually, that's not the question I asked. Is there statutory authority for equitable tolling in this situation? No, Your Honor. There is no direct statutory authority, but there is case law, Your Honor. And that's where Albillo comes into play, Albillo de Leon. In that case, the Court specifically said that statute of limitations are subject to equitable tolling, but not statutes of repose. In Albillo, the Court had to consider whether Section 203, which was a section under the Nicaraguan and Central American Relief Act, commonly known as MACARA, if that section was a statute of limitation subject to equitable tolling. What they did was they looked at the specific language of the statute, and they found that that statute had no fixed deadline for filing the motion to reopen. All that it had was language that said that the attorney general shall fit a deadline, set a deadline 60 days after the initiation of the new act under NICARA, and within 240 days. There was no fixed deadline by set for the attorney general. He just had a window period. What is your view of how the case of Hernandez-Mancia applies here, this Court's recent case? Your Honor, I have not had an opportunity to look at that case. However, I did look at the Irigoyen-Briones that was recently decided by the Court. Well, that case that I just mentioned held that equitable tolling is not available when the alleged unfairness is external to the immigration procedure itself. That is, here you have a lawyer who is a disaster, but that's external to the procedure. That's why I asked you what, you know, how that case might apply here. Well, Your Honor, again, I didn't have an opportunity to review that case. But I can say that in Obilio de Leon, a 2005 case from the Ninth Circuit, specifically states, sets out the parameters when a statute is determined to be one of limitation or one of repose. In that, like I mentioned earlier, that case, it was found to be a statute of limitation because the attorney general had no set period to set a deadline. And that is the exact situation in cancellation law. Under 8 U.S.C. 1229B, there is no set date that the attorney general must file an NTA. The notice to appear is what sets the time, sets the time period backwards ten years for there to be, for the ten years to start counting. But the attorney general has no fixed date. It is completely at his volition. He can and often does in actual practice submit the NTA, if he wants, after the denial of an asylum case coming out of the asylum unit, perhaps 18 months down the road, perhaps never. It is completely at his volition. Am I correct that the attorney general could withdraw the NTA in this case? Absolutely, Your Honor. And occasionally they will do that. And I would also like to point out another issue that I believe is important here. Excuse me, but was there ever a request for that to be done? In this situation, no, Your Honor. I don't believe it was ever done. No. However, this matter was set for mediation, and we did speak with government counsel through the mediator, and we did try to convince the general counsel's office to retract the notice to appear or at least to reset it with a new date. I would also like to point out, Your Honor, that as the matter of deference that is discussed in cases of Chevron and INS Aguirre-Aguirre, that language is not applicable in this matter only because there is no language to give deference to. There is no specific language where the attorney general must meet a certain deadline for the filing of the NTA. So there is no deference. And that deference, even if it did exist, that deference is not absolute, especially when an interpretation can be contrary to law. And the Court recently found this in Yrigoyen-Briones, a decision that came down May 31st, just very recently, where the Court said that although there is a high level of deference to agencies interpreting their own regulations, it is not an absolute deference when it is contrary to the law. Scalia. Has any effort been made at this point to obtain special legislation for the relief of your clients? No, I am not aware of that, Your Honor. Not that I am aware of none. Is that avenue open to them? I'm sorry? Is that avenue open to them? Oh, absolutely. If Congress would like to change the law, petitions. Is special legislation dealing with them? Yes, Your Honor. Special legislation is extremely, extremely difficult and expensive and unlikely. Can I reserve my time, Your Honors? Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court, my name is Stephanie Savorn. I'm an attorney with the U.S. Department of Justice, and I represent the government in this matter. How long have you been representing the government in this matter? A year and a half. The issue before this Court is whether or not the record compels the reversal of the Board's decision that three of the petitioners were ineligible for cancellation of removal because they failed to establish the necessary 10 years of continuous physical presence in the United States. Were you representing the government during mediation? No, I was not, Your Honor. Ari Nazaroff was a briefing attorney, and he represented the government during mediation. Do you have any idea why the government has been so obstinate in this case? Well, from my understanding of it, Your Honor, is that there is a statutory framework in place, and ICE has some prosecutorial discretion whether or not to pursue these cases. First, it is the government's contention that the prior attorney committed a crime. The petitioner's prior attorney. Petitioner's prior counsel, which placed petitioners into the proceedings. However, though, ICE has prosecutorial discretion. Yes, it does, but it's supposed to follow the policy as laid down by the President and by the United States government, by the Secretary of Homeland Security. And the government, they have said repeatedly that we're not after families. And this is the classic situation of separating a family with a dying child, and there's been opportunity after opportunity to mediate, to withdraw the NTA. You've been asked to do so. What's going on? Yes, Your Honor. The government is sympathetic in this case. And there have been a number of routes. But not enough to do anything. Well, Your Honor, there are limited circumstances in which the government can help to rectify this situation. One of which was the talk of repapering. However, repapering is a relief that's only allowed in deportation and exclusion proceedings. These are removal proceedings. The NTAs were issued to petitioners in 2000, so it's removal proceedings. Under that, that remedy is not available. When you say repapering, what do you mean? That would be rescinding the previous NTA that was issued and issuing a new one. And you say that they couldn't do that in this case? Cannot do it in that case because it's limited only to deportation and exclusion proceedings. And the statute for that? There's no statute. The regulations have never been promulgated, but it's ICE authority. It's ICE authority? Yeah, internal operating procedure. What would be the site for that? There is no site that I have. It's internal operating procedure, Your Honor. Also, there is a possibility that petitioners can ask for deferred action in this case, which once the PFR has been adjudicated by this court, petitioners' counsel then can approach ICE and ask that the order of removal be deferred. And finally, as regards to remedy, Mr. Segunda Sanchez, who is a former lead petitioner in this case, he was granted cancellation of removal. Unfortunately, cancellation of removal is a relief that requires each individual to apply. Therefore, there can be no derivative beneficiaries. Are you stating that pursuant to an internal operating procedure that is not citable, that the government could not have agreed in the mediation that they would withdraw the notice to appear? As I stated, I was not a participant in the mediation. So I do not know that. But is this the position of the government? The position of the government right now is that under the given statutory framework, petitioners are not eligible for cancellation of removal. Petitioners' prior counsel committed a mistake in telling them that their or the lead petitioner's seat of entry would be imputed to the other three petitioners, which initiated proceedings. However, under this Court's precedent, namely Laura Torres, this Court has held that removal proceedings do not become constitutionally unfair simply because they are precipitated in part by an attorney's advice instead of general ionist delay, and that when we have characterized counsel's assistance as ineffective, the legal services were rendered while proceedings were ongoing, that is, after a charging document was filed. The actions by petitioners' counsel in this case were rendered prior to the notice to appear being served. Also, Your Honors, I want to point out that petitioners' counsel seeks equitable tolling of when ICE issued the notice to appear. However, service of the NTA falls within the realm of the attorney general's prosecutorial discretion. Okay. I think we understand that. So you were not the attorney when the brief was filed? Correct, Your Honor. And when this argument was noticed, did you talk to anyone about the government's position here? Yes, I have. I spoke with the briefing attorney. Also, I participated in a moot argument which involved the director, my supervisor, as well as another senior litigation counsel. And I have had contact with Margaret Curry. She is deputy chief counsel for ICE in San Francisco. And we spoke about this case. And she said re-papering, unfortunately, is not available in this case because it's a removal proceeding. However, she did point out that Mr. Segundo Sanchez has been in LPR since February 2006, so he's eligible to naturalize, in which case an immediate relative visa could become available for both the wife and the sons. Also, the one son who's unfortunately stricken by this lung and pulmonary compromise situation, he is 19. At the age of 21, he could also petition for his mother and for his two brothers. And how long does it take for that to, if either the husband or son are able to become naturalized citizens, how long does it take for all of this to happen before the families reunite? I'm not certain, Your Honor. Well, give me a guess as a practical matter. I can't speak to that, Your Honor. I have no knowledge. It's not immediate, is it? That I do not know. I can't speak to that. It's going to take some time to go through the proper... Do you know whether this avenue that you've just mentioned, that is naturalizing on the part of the father and then seeking to keep the family here on that ground, was that discussed in the mediation? I was not privy to mediation. Also, I think that the confidentiality provisions that govern mediation, I would not be able to express what happened. Well, I guess what I'm just wondering is whether it would, since this avenue has now been mentioned, whether it would be fruitful to send it back to mediation again, potentially. At this point in time, I would have to confer with ICE about that and my supervisors. I myself do not have the authority to send it back to mediation. I know mediation has... No, it would be an order of the court, so we're not asking you to do it, but I'm just asking whether it might be useful. But you do not have authority to commit that anything would be, that the government would be receptive to any proposals to ring mediation, I take it, at this point. I do not. But you could discuss it further in light of the court's questioning here. Yes, Your Honor, I could. But based on my conversations with the Deputy Chief Counsel right now, they believe that the best remedy at this time is that once the PFR is adjudicated for Petitioner's Counsel to seek deferred action and then pursue the other possible remedies so that the wife and the sons should be able to stay here. And who is the, what is the entity that would defer action? That would be ICE, Immigration and Customs Enforcement. Ah, yeah. Yeah. So, as I said before, the government is very sympathetic to this case. Unfortunately, given the statutory... I just, I really can't understand. I've read policy statement after policy statement by the President and by the higher ups in the Department and the Attorney General, and everybody says, we don't want to go after families, we don't like the tragedy that we have in these situations where families are broken up. And yet we have this pursuit of a family here that was all a mistake, and everybody acknowledges that. Yes, Your Honor. And the government is sympathetic. Yeah. But not willing to do anything. The government is willing to do it should Petitioner's Counsel seek some alternative remedies, which have been discussed prior during argument, being the deferred action, being the immediate visa relative. That's a discretionary decision. And ICE would then take into consideration the sympathetic factors. Okay. Thank you. So with that, I would like to conclude that this Court should uphold the agency's finding that Petitioners are not prima facie eligible for cancellation of relief because they have been in the United States for nine and a half years. Also, the agency's determination that equitable tolling does not apply to the instant case is correct. As a 10-year continuous physical presence requirement is a conditional threshold for relief mandated by Congress, one that the Court is not free to modify. All right. You have Easter time. Thank you, Your Honors. I would just like to point out to Your Honors that this was not a mistake. The immigration judge found fraud. This was not a tactical mistake by previous counsel. It was not simply ineffective assistance of counsel. It was out-and-out fraud. I want to address the issue of the male respondent in this case who, yes, will be eligible for citizenship. He can apply for his wife. The practical effect of petitioning an immediate relative, immediate under the service terms, is about a year. And they are not eligible to adjust or obtain their green card or residency status in the United States. They would be forced to leave the United States and then be subject to a 10-year bar of returning. And the embassy is not easily persuaded with pardons or any types of waivers to allow them to reenter the United States. Deferred action is not necessarily, actually, it is not a remedy in this matter, Your Honor, because the respondents, the petitioners would be constantly at the will of the service to have to be deported or removed from the United States at any time. And I would believe that they could make that decision as soon as that United States citizen child becomes 21. He is 19 now and is still undergoing surgeries, Your Honor. Thank you. That is all. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Ripple, Graber